UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                              :
PARK OK-GU,                                   :
                                              :
                                  Plaintiff,  :
                                              :                    25-CV-9818 (VSB)
                     -against-                :
                                              :              **OPINION & ORDER**
DISTROKID, INC., *et al.*,                    :
                                              :
                                 Defendants.  :
-------------------------------------------------------- X

Appearances:

Park Ok-Gu
The Republic of Korea
*Pro se Plaintiff*

Jenna Harris
Ritholz Levy Fields LLP
Nashville, TN
*Counsel for Defendants DistroKid Inc., PK Interactive, Inc., and Spotify USA Inc.*

VERNON S. BRODERICK, United States District Judge:

Before me are Plaintiff Park Ok-Gu's ("Plaintiff") proposed temporary restraining orders

seeking an order requiring:  (1) mandatory restoration of Plaintiff's music catalog; (2)

preservation of evidence and prohibition from "altering, deleting, or migrating any backend

server logs, financial metadata, or streaming interaction data related to Plaintiff's works"; (3)

authorization for third-party subpoenas on "YouTube, Spotify, Apple Music, Amazon Music,

and TikTok[] to produce raw streaming data," (Doc. 41 ("Third TRO Mot." or "Third TRO

Motion") at 1–2); and (4) freezing "all revenues, royalties, and accounts associated with

Plaintiff's works," (Doc. 60 ("Fourth TRO Mot." or "Fourth TRO Motion") at 4).  Also before

me are Plaintiff's Fifth TRO Motion seeking similar relief, (Doc. 69 ("Fifth TRO Mot." or "Fifth

TRO Motion," and collectively with the Third TRO Motion and Fourth TRO Motion, the "TRO

Motions")), Plaintiff's motion for an order for preservation of evidence and expedited discovery, (Doc. 58 ("Discovery Mot." or "Discovery Motion")), and Plaintiff's motion for a default judgment against YouTube and TikTok, (Doc. 72 ("DJ Mot." or "Default Judgment Motion")).

Due to the deficiencies in the complaints, the TRO Motions, the Discovery Motion, and the Default Judgment Motion discussed below, Plaintiff's TRO Motions, Discovery Motion, and Default Judgment Motion are DENIED without prejudice.

## I.    <u>Factual Background & Procedural History</u>[1]

On November 22, 2025, Plaintiff initiated this case against DistroKid, Inc. ("DistroKid"), YouTube LLC ("YouTube"), and Spotify USA Inc. ("Spotify"). (Doc. 1.) Since filing the initial complaint, Plaintiff has amended his complaint four times, (Docs. 5, 20, 30, and 39[2]), including asserting claims against additional defendants that were not defendants in the initial complaint and subsequently removing defendants that were included in earlier complaints.[3] Plaintiff is the "creator of AI-generated music specializing in 1970s-80s Korean Trot music" and owns "163+

---

[1] I assume the parties' familiarity with the relevant facts and procedural history, which are set forth in my March 4, 2026 Opinion & Order. (*See* Doc. 26 ("Op." or "Opinion").) I only cite facts necessary to address the instant motions. Any facts recited herein are taken from the initial complaint, (Doc. 1), first amended complaint, (Doc. 5), second amended complaint, (Doc. 20), third amended complaint, (Doc. 30), and fourth amended complaint, (Doc. 39). My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] The initial complaint was amended a second time without the opposing party's consent or me granting leave, (*see* Doc. 20), as Fed. R. Civ. P. 15(a)(2) requires. In the Opinion, I granted Plaintiff leave to amend his complaint a third time, given Plaintiff's pro se status, and directed him to provide certain clarifying facts in the third amended complaint. (Op. 8, 17.) Although Plaintiff filed a third amended complaint after my Opinion, (Doc. 30), he filed a fourth amended complaint two weeks later, without receiving the opposing party's consent or me granting leave, (Doc. 39).

[3] On April 20, 2026, Magistrate Judge Valerie Figueredo, to whom I referred the case to for general pre-trial, (Doc. 37), extended Plaintiff's time to serve the summons and all five complaints filed to date on DistroKid, YouTube, Spotify, PK Interactive LLC ("PK Interactive"), and Bytedance LTD. to Monday, May 18, 2026. (Docs. 43, 47.) After Plaintiff filed several affidavits of service on May 5 and May 7, 2026, (Docs. 50–57), Plaintiff filed a motion to extend his time to serve Defendants on May 15, 2026 because he "cannot be certain that service has been properly effectuated in compliance with Rule 4" and "additional time is necessary to verify the accuracy of the service addresses and, if necessary, re-attempt service," (Doc. 67 at 1.) On May 18, 2026, Magistrate Judge Figueredo extended Plaintiff's time to serve Defendants to July 17, 2026. (Doc. 68.)

original tracks." (Doc. 20 ¶¶ 3, 7.)  Plaintiff alleges, among other things, that defendants

DistroKid, PK Interactive, and Does 1-10 (the "Defendants")[4] engaged in copyright infringement

of Plaintiff's original works of music.  "Plaintiff created original tracks via Suno AI . . . and

distributed [the songs] through DistroKid.  Unauthorized parties uploaded identical works before

or after distribution, generating revenue.  Platforms later removed content, confirming

infringement patterns."  (Doc. 1 at 1.)  Plaintiff also alleges that "Defendants have engaged in a

'Piracy Enterprise,' concealing Plaintiff's works within a pool of over 20,000 unauthorized files

to generate illicit royalties."  (Doc. 20 ¶ 8 (emphasis omitted).)  Plaintiff's fourth amended

complaint additionally asserts claims for civil RICO, wire fraud, deceptive trade practices and

fraudulent misrepresentation, breach of contract and breach of implied covenant of good faith,

and intentional spoliation of evidence.  (Doc. 39 at 1.)

On April 17, 2026, Plaintiff filed his Third TRO Motion, which includes a proposed

order to show cause, (Third TRO Mot. 1–2), what appears to be a declaration by Plaintiff, (*id.* at

3–9), and several exhibits, (*id.* at 10–43).  First, Plaintiff asserts that the request for restoration is

"based on Defendant DistroKid's own admission of ownership in its official email dated January

22, 2026 . . . and prior verifications of ownership by Spotify and YouTube."  (*Id.* at 1; *see also*

*id.* at 22–23, 26–27.)  Second, Plaintiff seeks an order requiring evidence preservation because of

an alleged "imminent risk of data spoliation during Defendants' rumored corporate sale."  (*Id.* at

2; *see also id.* at 40 (February 2, 2026 article titled "DistroKid Weighs Potential Sale").)  Third,

Plaintiff seeks authorization for third-party subpoenas because "discovery is essential to cross-

---

[4] Plaintiff's fourth amended complaint "dismissed Google (YouTube), Spotify, and ByteDance (TikTok) as direct defendants to focus the litigation on the primary involved parties, DISTROKID . . . and PK INTERACTIVE." (Doc. 39 at 1.)  As discussed *infra*, the only defendants in this case are those included in the case caption in Plaintiff's fourth amended complaint, (*see* Doc. 39), and I direct the Clerk of Court to remove YouTube LLC, Spotify USA Inc., and Bytedance LTD. (TikTok) from the case caption.

check [] financial anomalies" related to alleged revenue accruing without views or prior to the creation of songs, which Plaintiff asserts is evidence of "systemic data manipulation." (*Id.* at 2, 19; *see also id.* at 19–21.) On April 20, 2026, Plaintiff filed a supplemental declaration in support of the Third TRO Motion, in which Plaintiff asserts "new evidence of the Defendants' bad faith, refusal to negotiate, and collusion." (Doc. 42 at 1.)

On May 12, 2026, Plaintiff filed his Fourth TRO Motion, which includes a two-page memorandum of law in support of the Fourth TRO Motion, without setting forth any cases or authorities in support of the Fourth TRO Motion, and a declaration by Plaintiff. (*See* Fourth TRO Mot.) Plaintiff also filed a proposed order to show cause, (Doc. 60-1), an exhibit index, (Doc. 60-2), and several exhibits in support of the Fourth TRO Motion, (Doc. 60-3). The Fourth TRO Motion requests emergency relief "to prevent further destruction of evidence and dissipation of revenues derived from Plaintiff's copyrighted works" because Plaintiff alleges "[t]he destruction of 900+ videos and approximately 3.5 billion views after notice of litigation." (Fourth TRO Mot. 1, 3.) In addition to the request to "[f]reeze all revenues, royalties, and accounts associated with Plaintiff's works," Plaintiff requests similar relief to that which he requested in his Third TRO Motion: that I "[p]rohibit Defendants from deleting, altering, or transferring any related data" and "[o]rder preservation of all financial and streaming records." (*Id.* at 4.)

On May 18, 2026, Plaintiff filed the Fifth TRO Motion, (Docs. 69, 69-1), a declaration by Plaintiff, (Doc. 69-2), a three-page memorandum of law in support of the Fifth TRO Motion, without setting forth any cases or authorities in support of the Fifth TRO Motion, (Doc. 69-3), a proposed order to show cause, (Doc. 69-4), an exhibit index, (Doc. 69-5), and several exhibits, in support of the Fifth TRO Motion, (Doc. 69-6). Plaintiff's Fifth TRO Motion seeks similar relief

to that which he requests in his Third TRO Motion and Fourth TRO Motion: (1) "Immediate Platform Takedown & Account Freeze"; (2) "Emergency Data Preservation & Forensic Mandate"; and (3) "Extension of Order to Third-Party Providers." (Fifth TRO Mot. 3–4.)

As Plaintiff's TRO Motions and Discovery Motion request similar relief, the chart below summarizes the overlap between the requested relief in these motions:

| Requested Relief | First TRO Motion (Doc. 16) | Second TRO Motion (Doc. 30-2) | Third TRO Motion (Doc. 41) | Fourth TRO Motion (Doc. 60) | Fifth TRO Motion (Doc. 69) | Discovery Motion (Doc. 58) |
|---|---|---|---|---|---|---|
| Restoration of Plaintiff's Music Catalog | | | "MANDATORY RESTORATION OF CATALOG" (Third TRO Mot. 1.) | | | |
| Freeze Accounts and Assets | "ASSET FREEZE" (Doc. 16 at 1, 2.) | "Immediate Revenue Freeze" (Doc. 30-2 at 1.) | | "Freeze all revenues, royalties, and accounts associated with Plaintiff's works" (Fourth TRO Mot. 4.) | "Immediate Platform Takedown & Account Freeze" (Fifth TRO Mot. 3.) | |
| Evidence Preservation and Directing Discovery | "EVIDENCE PRESERVATION" (Doc. 16 at 1, 2.) | "Expedited Discovery" and "Mandatory Evidence Preservation" (Doc. 30-2 at 2.) | "EVIDENCE PRESERVATION" (Third TRO Mot. 2.) | "Prohibit Defendants from deleting, altering, or transferring any related data" and "Order preservation of all financial and streaming records" (Fourth TRO Mot. 4.) | "Emergency Data Preservation & Forensic Mandate" (Fifth TRO Mot. 4.) | "Immediate Preservation" and "Expedited Production" (Discovery Mot. 2.) |
| Issuance of Third-Party Subpoenas | "Third-Party Subpoenas" and "THIRD-PARTY DISCOVERY" (Doc. 16 at 1–2.) | | "AUTHORIZATION FOR LIMITED THIRD-PARTY SUBPOENAS" (Third TRO Mot. 3.) | | "Extension of Order to Third-Party Providers" (Fifth TRO Mot. 4.) | |

As noted, these are Plaintiff's third, fourth, and fifth motions for a temporary restraining order. I previously denied Plaintiff's first motion for a temporary restraining order, (Op. 16–17), and Plaintiff's second motion for a temporary restraining order, (Doc. 38 at 3), for failing to

adequately assert specific, irreparable harm, explain why monetary damages would not suffice to remedy any alleged harm, and demonstrate a likelihood of success on the merits. I also previously denied that portion of Plaintiff's first and second motions for a temporary restraining order which sought the asset and revenue freeze which Plaintiff reasserts in the Fourth TRO Motion and Fifth TRO Motion. (*See* Doc. 16 at 1; Op. 16; Doc. 30-2 at 1; Doc. 38 at 3.) Nonetheless, Plaintiff, undaunted and without heeding the admonitions in my prior decisions, reasserts this requested relief for a freeze in the Fourth TRO Motion, (Fourth TRO Mot. 4), and Fifth TRO Motion, (Fifth TRO Mot. 3). Plaintiff's Third TRO Motion seeks the mandatory restoration of his music catalog, (Third TRO Mot. 1), which he has not previously requested.

Plaintiff's previous requests for a preservation of evidence were denied three times. (*See* Op. 13–15; Doc. 38 at 3; Doc. 43.) Despite these denials, Plaintiff reasserts this requested relief for preservation of evidence in the Third TRO Motion, (Third TRO Mot. 2), Fourth TRO Motion, (Fourth TRO Mot. 4), and Fifth TRO Motion, (Fifth TRO Mot. 4).

Plaintiff also separately filed the Discovery Motion, claiming again that "approximately 3.5 billion views and 900 videos associated with the Plaintiff's property have been abruptly deleted." (Discovery Mot. 1.) Plaintiff's Discovery Motion requests that I order the following:

"[(1)] Immediate Preservation: All Defendants must immediately cease any deletion or alteration of server logs, activity history, and financial records related to Catalog ID: 7387376.

[(2)] Expedited Production (14 Days): Defendants must produce to the Plaintiff within 14 days:

[(a)] Complete activity logs and metadata for Catalog ID 7387376.

[(b)] Identification of all derivative tracks and remixes using ISRC matching and Content ID systems.

[(c)] A full breakdown of all revenue generated and the final destination of all payments, including bank account and recipient details (specifically regarding

6

transfers to PK Interactive LLC and Alexander Blue).

[(d)] Authentication: All produced records must be accompanied by a Certification of Business Records to ensure their authenticity as evidence."

(*Id.* at 2.)  Plaintiff asserts that the requested relief is necessary "[g]iven the clear evidence of ongoing spoliation" and the need "to protect the integrity of this litigation."  (*Id.* at 3.)  Plaintiff attaches a proposed order, (Doc. 58-1), and exhibits in support of his Discovery Motion, (Doc. 58-2), which are duplicative of Exhibits A-1–A-3 filed in support of the Fourth TRO Motion, (Doc. 60-3 at 1–3).

To summarize, the Third TRO Motion requests an order requiring mandatory restoration of Plaintiff's catalog and authorization of third-party subpoenas, (Third TRO Mot. 1), the Fourth TRO Motion and Fifth TRO Motion request an order freezing all revenues, royalties and accounts associated with Plaintiff's works, (Fourth TRO Mot. 4, Fifth TRO Mot. 3), all TRO Motions request an order requiring evidence preservation, (Third TRO Mot. 2; Fourth TRO Mot. 4; Fifth TRO Mot. 4), and the Third TRO Motion and Fifth TRO Motion request the issuance of third-party subpoenas, (Third TRO Mot. 3; Fifth TRO Mot. 4).

## II.    <u>Legal Standard</u>

"The purpose of a temporary restraining order is to preserve an existing situation *in statu quo* until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction."  *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 107 (2d Cir. 2009) (quoting *Pan Am. World Airways, Inc. v. Flight Eng'rs' Int'l Ass'n, PAA Chapter, AFL-CIO*, 306 F.2d 840, 842 (2d Cir. 1962)).  "A temporary restraining order 'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Stringer v. Simon & Schuster, Inc.*, No. 25-CV-0670, 2025 WL 1916136, at *1 (S.D.N.Y. June 20, 2025) (quoting *Moore v. Consol. Edison Co. of New York*, 409 F.3d 506, 510 (2d Cir. 2005)).

"In the Second Circuit, the same legal standard governs the issuance of preliminary injunctions and temporary restraining orders." *Mahmood v. Nielsen*, 312 F. Supp. 3d 417, 421 (S.D.N.Y. 2018). In order to obtain either a preliminary injunction or temporary restraining order, "a moving party must show four elements: (1) likelihood of success on the merits; (2) likelihood that the moving party will suffer irreparable harm if a preliminary injunction [or TRO] is not granted; (3) that the balance of hardships tips in the moving party's favor; and (4) that the public interest is not disserved by relief." *JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 F. App'x 31, 33 (2d Cir. 2015) (summary order) (citing *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010)).

### III.   Discussion

#### A.   *Local Civil Rule 7.1(a)*

Despite my Opinion previously explaining that Plaintiff's first motion for a temporary restraining order failed to comply with Local Civil Rule 7.1(a), (Op. 12), the TRO Motions once again fail to comply with Local Civil Rule 7.1(a), which requires, among other things, "[a] memorandum of law, setting forth the cases and other authorities relied on in support of the motion, and divided, under appropriate headings." Loc. Civ. R. 7.1(a). Plaintiff did not file a memorandum of law in support of the Third TRO Motion, (*see* Third TRO Mot.), and the memoranda of law filed in support of the Fourth TRO Motion and Fifth TRO Motion do not cite any law or other authorities, (*see* Fourth TRO Mot. 5–6; Doc. 69-3). Plaintiff's Discovery Motion and Default Judgment Motion similarly do not comply with Local Civil Rule 7.1 because they do not include memoranda of law or supporting affidavits. (*See* Discovery Mot.; DJ Mot.)

"A moving party's failure to comply with Local Rule 7.1 is sufficient grounds to deny a motion." *Anora v. Oasis Pro. Mgmt. Grp., Ltd.*, No. 19-CV-11732, 2023 WL 2307180, at *2 (S.D.N.Y. Mar. 1, 2023) (quoting *Anhui Konka Green Lighting Co., LTD. v. Green Logic LED*

*Elec. Supply, Inc.*, No. 18-CV-12255, 2021 WL 621205, at *1 (S.D.N.Y. Feb. 17, 2021)).  *See also Zuniga v. Newmark Wood Working Grp. Inc.*, No. 20-CV-2464, 2022 WL 3446331, at *7 (E.D.N.Y. Aug. 17, 2022) ("The omission of a memorandum of law is a meaningful omission and is sufficient in and of itself to warrant denial of the motion for default judgment" (collecting cases)).  Notwithstanding Plaintiff's repeated failure to comply with Local Civil Rule 7.1, I reviewed the TRO Motions, Discovery Motion, and Default Judgment Motion thoroughly and considered the claims asserted in those motions in the light most favorable to Plaintiff as a pro se litigant.  My decision to review the substance of these motions should not be viewed as approval of Plaintiff's continued failure to abide by the Local Rules.  I do so to provide pro se Plaintiff with guidance concerning the numerous substantive deficiencies in his motions.  Therefore, Plaintiff is warned that his continued failure to comply with the Local Civil Rules, despite direct orders specifying what is needed, will likely lead to denial of future motions that continue to fail to comply with the Local Civil Rules.

### B.  *Motions for Temporary Restraining Orders*

The TRO Motions do not meet the standard for emergency injunctive relief because Plaintiff fails to demonstrate that he will suffer irreparable harm if an injunction is not issued.  Specifically, he fails to demonstrate why the injuries he complains of are actual and imminent and cannot be remedied by monetary damages.  Moreover, Plaintiff fails to establish a likelihood of success on the merits with regard to his copyright infringement claim against Defendants.  Plaintiff provides no basis to disrupt the normal pace of this litigation.

As explained below, Plaintiff is cautioned that his repeated filing of motions seeking injunctive relief that have already been decided and denied is a waste of judicial resources and may result in the imposition of sanctions if Plaintiff continues this course of action.

9

### 1. Irreparable Harm

"Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Sterling v. Deutsche Bank Nat' l Tr. Co. as Trs. for Femit Tr. 2006-FF6*, 368 F. Supp. 3d 723, 727 (S.D.N.Y. 2019) (quoting *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) (citation omitted)). "[I]f a party fails to show irreparable harm, a court need not even address the remaining elements." *Coscarelli v. ESquared Hosp. LLC*, 364 F. Supp. 3d 207, 221 (S.D.N.Y. 2019). To establish irreparable harm, movants must demonstrate "they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)). Irreparable harm is one for which "money damages cannot provide adequate compensation." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (quoting *N.Y. Pathological & X– Ray Lab'ys., Inc. v. Immigr. & Naturalization Serv.*, 523 F.2d 79, 81 (2d Cir. 1975)). Accordingly, "Plaintiffs are entitled to an injunction only if they can demonstrate that, in the interval between this date and the date in the near future upon which the Court is expected to render a final decision, they will suffer an injury that cannot be repaired." *Metro. Transp. Auth. v. Duffy*, 784 F. Supp. 3d 624, 690 (S.D.N.Y. 2025).

Here, Plaintiff does not clearly allege an actual and imminent irreparable harm. The closest Plaintiff gets is the allegation in the Third TRO Motion that "[t]his [TRO] order is necessitated by the imminent risk of data spoliation during Defendants' rumored corporate sale." (Third TRO Mot. 2.) Despite Plaintiff asserting an "imminent risk of data spoliation during Defendants' rumored corporate sale," (*id.*), Plaintiff does not explain why any "corporate sale"

or "corporate restructuring poses a critical risk of [e]vidence [s]poliation" or why he believes that "server logs and metadata may be altered or deleted during ownership transition," (*id.* at 8 (emphasis omitted)). Furthermore, Plaintiff refers to an exhibit to the Third TRO Motion which is a news article titled "DistroKid Weighs Potential Sale" dated February 2, 2026, (*id.* at 40)—an article from over four months ago. Plaintiff does not explain why any sale is indeed imminent or why any such sale would result in the spoliation of evidence relevant to this lawsuit sufficient to warrant a temporary restraining order. Plaintiff's assertion of a speculative potential sale and conclusory assertion of evidence spoliation, without factual allegations to support those assertions, does not warrant the "extraordinary and drastic remedy" of a temporary restraining order. *Stringer*, 2025 WL 1916136, at *1 (internal quotation marks omitted).

The Fourth TRO Motion asserts that Plaintiff established irreparable harm because "Defendants deleted substantial data after notice of litigation," which Plaintiff alleges "constitutes loss of evidence and impairs Plaintiff's ability to prove damages." (Fourth TRO Mot. 6.) In support of the Fourth TRO Motion, Fifth TRO Motion, and the Discovery Motion, Plaintiff attaches as an exhibit three screenshots from the YouTube channel of "Akpenebrigittemon" and states that this channel had over 3.63 billion total views and 968 videos at an unknown date and on April 23, 2026, the total number of views dropped to 187 million and the total number of videos dropped to 32 videos. (*See* Doc. 60-3 at 1–3; Doc. 58-2 at 1–3; Doc. 69-6 at 1–3.) Plaintiff asserts that "approximately 3.5 billion views and 900 videos associated with the Plaintiff's property have been abruptly deleted." (Discovery Mot. 1.) Plaintiff does not explain who controls the YouTube channel for "Akpenebrigittemon," does not provide evidence regarding how Akpenebrigittemon's 3.63 billion views and 968 videos were associated with Plaintiff's property, namely, the alleged copyrighted songs at issue in this case,

11

does not allege the specific timing relating to Akpenebrigittemon's views and videos being deleted, and does not explain why Plaintiff believes that the Defendants destroyed such evidence. I note that Plaintiff's fourth amended complaint removed YouTube as a defendant "to focus the litigation on the primary involved parties, DISTROKID . . . and PK INTERACTIVE." (Doc. 39 at 1.) Plaintiff has not proffered any evidence, apart from his belief that Defendants deleted Akpenebrigittemon's views and videos, that such evidence is relevant and is in danger of being destroyed.

The Fifth TRO Motion asserts that Plaintiff established irreparable harm because "Plaintiff's copyrighted works are being distributed globally, making recovery effectively impossible," "Plaintiff has lost control over the use and dissemination of the works," "[t]he infringement is ongoing and continues to cause cumulative harm," and "[s]uch harm cannot be adequately remedied by monetary damages alone." (Doc. 69-3 at 1–2.) Beyond Plaintiff's conclusory statements, Plaintiff fails to explain why recovery is "impossible," (*id.* at 1), or why monetary damages would not suffice to remedy any alleged harm. Indeed, as a general matter, the TRO Motions fail to explain why monetary damages would not suffice to remedy any alleged harm, including harms related to Defendants' alleged deletion of relevant discovery.

### 2. Likelihood of Success on the Merits

Given the deficiencies previously discussed in my Opinion, (*see* Op. 8–9, 16–17), and my order denying Plaintiff's second motion for a temporary restraining order, (Doc. 38 at 2–3), deficiencies Plaintiff has not cured, Plaintiff cannot demonstrate a likelihood of success on the merits. Where a party seeks to "alter, rather than maintain, the status quo," the movant "must show a 'clear' or 'substantial' likelihood of success." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) (quoting *Tom Doherty Assoc., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 34

12

(2d Cir. 1995)).  The complaints do not contain sufficient factual allegations to make this showing because Plaintiff has not adequately alleged that he satisfied the precondition of copyright preregistration or registration prior to asserting the claim of copyright infringement.

Plaintiff has indicated that he registered certain musical works with the Korea Copyright Commission on April 6, 2026 and that he paid for an application to register certain musical works with the U.S. Copyright Office.  Exhibit B to the third amended complaint provides a screenshot indicating that Plaintiff's copyright applications submitted to the Korea Copyright Commission are under review, (Doc. 30-1 at 3), and a screenshot of a proof of payment, which Plaintiff asserts is an "[o]fficial filing receipt and pending status confirmation from the United States Copyright Office," (*id.* at 4).  Exhibit B to the fourth amended complaint provides five certificates of copyright registration indicating that those musical works were registered with the Korea Copyright Commission on April 6, 2026, and also includes the same proof of payment attached as Exhibit B to the third amended complaint.  (Doc. 39-1 at 6–11.)  Exhibit B to the Third TRO Motion contains the same April 6, 2026 certificates of copyright registration with the Korea Copyright Commission and proof of payment as Exhibit B to the third and fourth amended complaints.  (Third TRO Mot. 11–18.)  The Fourth TRO Motion and Fifth TRO Motion do not include these exhibits, or any other exhibits regarding Plaintiff's purported copyright registration.  (*See generally* Fourth TRO Mot; Fifth TRO Mot.)

As an initial matter, Plaintiff has not established that he possesses a registered copyright with the United States Copyright Office.  Instead, Plaintiff acknowledges that he "has formally submitted the registration application for the music catalog and has successfully paid the required statutory filing fees."  (Third TRO Mot. 17.)  However, "[i]n this Circuit, . . . 'a pending [copyright] application does not suffice.'  The plaintiff must 'either hold a valid copyright

13

registration outright or have applied and been refused a registration *prior* to filing a civil claim.'" *Architectural Body Rsch. Found. v. Reversible Destiny Found.*, 335 F. Supp. 3d 621, 643 (S.D.N.Y. 2018) (emphasis in original) (quoting *Muench Photography, Inc. v. Houghton Mifflin Harcourt Pub. Co.*, 2012 WL 1021535, at *5 (S.D.N.Y. Mar. 26, 2012)).  *See also ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 155 (2d Cir. 2007) ("Precisely because a trademark has a separate legal existence under each country's laws, ownership of a mark in one country does not automatically confer upon the owner the exclusive right to use that mark in another country. Rather, a mark owner must take the proper steps to ensure that its rights to that mark are recognized in any country in which it seeks to assert them.").

Furthermore, Plaintiff's assertion that certain of his songs are registered with the Korea Copyright Commission does not create protection under the Copyright Act because he has not established "that the copyrighted works are not 'United States works' as that term is used in § 411(a)."  *Joint Stock Co. "Channel One Russia Worldwide" v. Infomir LLC*, No. 16-CV-1318, 2022 WL 2530456, at *16 (S.D.N.Y. Mar. 9, 2022), *report and recommendation adopted*, 2024 WL 5154462 (S.D.N.Y. Dec. 18, 2024).  "Pursuant to the Copyright Act, holders of copyrights in 'United States works" may not institute a copyright infringement suit 'until preregistration or registration has been made,'" *DigitAlb, Sh.a v. Setplex, LLC*, 284 F. Supp. 3d 547, 554 (S.D.N.Y. 2018) (quoting 17 U.S.C. § 411(a)).  "A work is a 'United States work' only if, in the case of a published work, it is first published (1) in the United States; (2) simultaneously in the United States and another treaty party whose law grants copyright protection for at least the term provided in the United States; (3) simultaneously in the United States and a foreign nation that is not a treaty party; or (4) in a foreign nation that is not a treaty party, and all the authors of the work are headquartered in the United States." *Id.* at 554–55 (citing 17 U.S.C. § 101).  "On the

14

other hand, non-United States works—generally, works first published outside the United States in a foreign country that is a signatory to the Berne Convention—are exempt from registration." *Id.* at 555. The Republic of Korea has been a signatory to the Berne Convention since May 21, 1996. *See Contracting Parties, Berne Convention*, WORLD INTELL. PROP. ORG., https://wipolex.wipo.int/en/treaties/ShowResults?search_what=C&treaty_id=15 (last visited June 4, 2026). Although the complaints suggest that Plaintiff's songs may have originated in Korea, the complaints do not allege where the works were first published or if the works were simultaneously published within and outside the United States. *See Setplex, LLC*, 284 F. Supp. 3d at 555–56 (dismissing a copyright infringement claim because "while the amended complaint suggests that the works may have 'originated' in Albania or Kosovo from a layman's perspective, it says nothing about where the works were first published").

In any event, "[a]s courts in this district have held, a copyright infringement claim will be dismissed where the allegedly infringed work, in this case, the musical composition, was not registered at the time the original complaint was filed." *Pickett v. Migos Touring, Inc.*, 420 F. Supp. 3d 197, 205 (S.D.N.Y. 2019) (collecting cases). "[A]mending the complaint is not a workaround to the statutory requirement in the Copyright Act that 'no civil action for infringement of copyright in any United States work shall be instituted until . . . registration of the copyright claim.' Courts in this Circuit . . . have routinely rejected the argument . . . that amending the complaint can cure a failure to register a copyright before initiating a copyright infringement lawsuit." *M.V. Music v. V.P. Recs. Retail Outlet, Inc.*, 653 F. Supp. 3d 31, 42 (E.D.N.Y. 2023) (quoting 17 U.S.C. § 411(a)). Therefore, Plaintiff's registration with the Korea Copyright Commission as of April 6, 2026 or his application to the United States Copyright Office, (Third TRO Mot. 11–18), after he filed the initial complaint on November 22, 2025,

15

(Doc. 1), does not constitute compliance with the Copyright Act's statutory requirement of registration at the time that a plaintiff asserts a claim for copyright infringement.

Accordingly, Plaintiff fails to establish a likelihood of success on the merits of his copyright infringement claim.

### C.    *Discovery Motion*

The Discovery Motion is Plaintiff's sixth request for evidence preservation and discovery, although Plaintiff subsequently requested the same relief in the Fourth TRO Motion and Fifth TRO Motion.  Thus, in total, Plaintiff has requested the evidence preservation relief eight times:  (1) Doc. 16 at 2 (first TRO motion requesting an order that "Defendants shall not delete, alter, or destroy any internal logs, communications with third parties . . . or transaction records related to this case"); (2) Doc. 23 ("EMERGENCY Motion for Evidence Preservation and Discovery Order"); (3) Doc. 30-2 (second proposed order attached to the third amended complaint "for immediate revenue freeze (TRO), evidence preservation, and expedited discovery")); (4) Doc. 39 at 5 (fourth amended complaint requesting "[a]n immediate order compelling Defendants to preserve all original server logs and metadata, especially in light of the rumored corporate sale of DistroKid . . . to prevent further spoliation"); (5) Third TRO Mot. 2, 8 (Third TRO Motion seeking an order for evidence preservation); (6) Discovery Mot.; (7) Fourth TRO Mot. 4 (Fourth TRO Motion seeking an order for evidence preservation); (8) Fifth TRO Mot. 4 (Fifth TRO Motion seeking "an immediate forensic hold on all server logs, historical streaming records, and financial accounts to lock evidence before another retaliatory deletion occurs").  Plaintiff's request for evidence preservation has also already been denied three times: (1) I denied Plaintiff's first TRO motion and motion for evidence preservation and discovery, (Op. 13–15); (2) I denied the request in Plaintiff's Proposed Order "for immediate revenue freeze

16

(TRO), evidence preservation, and expedited discovery," (Doc. 38 at 1, 3); and (3) Magistrate Judge Figueredo denied Plaintiff's request in the fourth amended complaint for an immediate mandatory evidence preservation order for the same reasons I stated in my two previous orders, (Doc. 43).

As stated above, Plaintiff failed to present any evidence that Defendants did or will destroy relevant evidence, that the relevant evidence is otherwise at risk of destruction, or that any irreparable harm will likely result to Plaintiff absent an order directing the preservation of evidence. *See supra* Part III.B.1. Furthermore, as I previously stated, "Defendants have an affirmative obligation to ensure that any relevant evidence . . . is not destroyed and that obligation exists independent of a preservation order. . . . Defendants are likely aware that they are parties to a pending litigation because counsel from Ritholz Levy Fields LLP joined the February 13, 2026 telephonic conference and indicated that she represents PK Interactive, Philip Kaplan, DistroKid, and Spotify. Indeed, anyone who anticipates being a party or is a party to a lawsuit must not destroy unique, relevant evidence that might be useful to an adversary." (Op. 14–15 (internal quotation marks omitted).)

Additionally, Plaintiff's request in the Discovery Motion for an "[e]xpedited [p]roduction" of documents, (Discovery Mot. 2), is premature. Pursuant to Federal Rule of Civil Procedure 26(a)(1), "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(a)(1). This action is not an action exempted from initial disclosure under Federal Rule of Civil Procedure 26(a)(1)(B), and the expedited discovery is not otherwise authorized by rules, by stipulation, or by court order. "These motions for discovery were filed

17

before the [] Defendants [have had an opportunity to] file[] their answer, meaning that Plaintiff must make a showing of good cause to depart from the traditional rules regarding discovery before the discovery requests can be granted." *Lurch v. Kim*, No. 22-CV-2324, 2026 WL 761589, at *8 (S.D.N.Y. Mar. 18, 2026).

Nowhere in the Discovery Motion does Plaintiff set forth adequate facts that could establish "good cause" such that I would be persuaded to permit deviation from the ordinary rules and procedures governing discovery in civil cases.  Plaintiff asserts that an order on the Discovery Motion is necessary to "protect the integrity of this litigation" "[g]iven the clear evidence of ongoing spoliation." (Discovery Mot. 3.)  However, this argument relates to the alleged potential destruction of evidence and Plaintiff's request for an order requiring the preservation of evidence, not the need for expedited production of discovery.  In other words, the Discovery Motion does not separately demonstrate cause, let alone good cause, for expedited discovery.

Although Plaintiff has filed several affidavits of service on the docket, Magistrate Judge Figueredo recently granted Plaintiff's request for an extension of time to serve Defendants until July 17, 2026, (Doc. 68), and thus it does not appear that Defendants have been properly served. However, Plaintiff has not alleged that he is unable to serve Defendants sooner than July 17, 2026 and subsequently begin conferring regarding discovery.  This action has been pending for over six months, since November 22, 2025, (Doc. 1), and any undue delay in seeking discovery is of Plaintiff's own doing.  Moreover, beyond Plaintiff's conclusory assertions regarding potential destruction of evidence, Plaintiff has not explained why I should deviate from my general scheduling practices and require Defendants to produce documents before they respond to the complaints, or adequately alleged that expedited discovery is needed to avoid harm or

18

prejudice to Plaintiff.

Accordingly, Plaintiff's Discovery Motion is DENIED.

### D.    *Default Judgment Motion*

Plaintiff's Default Judgment Motion asserts that YouTube and TikTok have "failed to plead or otherwise defend this action" after "Defendants were served on" "May 5, 2026." (DJ Mot. 1.) I previously granted Plaintiff leave to amend his complaint a third time and explicitly stated that "if Plaintiff amends his complaint a third time, Plaintiff should include all defendants and causes of action against each defendant in the Third Amended Complaint." (Op. 8 n.4.) Although Plaintiff's third amended complaint does include "GOOGLE LLC (YOUTUBE)" and "BYTEDANCE LTD. (TIKTOK)" as defendants, (Doc. 30 at 1), the fourth amended complaint—filed without receiving the opposing party's consent or me granting leave— "dismissed Google (YouTube), Spotify, and ByteDance (TikTok) as direct defendants to focus the litigation on the primary involved parties, DISTROKID . . . and PK INTERACTIVE," (Doc. 39 at 1). Federal Rule of Civil Procedure 10(a) requires that the complaint "name all the parties." Fed. R. Civ. P. 10(a). The fourth amended complaint does not include YouTube or TikTok in the case caption and does not include any allegations against YouTube or TikTok, (*see* Doc. 39), removing YouTube and TikTok "from the caption of [Plaintiff's] submissions, indicat[es] [Plaintiff's] intent to dismiss them as parties to this action," *Claudio v. City of New York*, 423 F. Supp. 2d 170, 171 n.1 (S.D.N.Y. 2006), and Plaintiff explicitly stated that he dismissed YouTube and TikTok as defendants, (*see* Doc. 39 at 1). *See also Bos. v. Taconic Mgmt.*, No. 12-CV-4077, 2014 WL 4184751, at *1 n.2 (S.D.N.Y. Aug. 22, 2014) ("Because Plaintiff has voluntarily dropped 'Douglas Ellman' from the Amended Complaint and from the case caption appearing in its motion papers, that entity will be terminated."); *Vincent v. Winski*,

19

No. 14-CV-7744, 2018 WL 1441370, at *14 n.19 (S.D.N.Y. Mar. 22, 2018) ("Plaintiff did not include any allegations against Edward Blanco, Wilson Vernelly, Carbajal, and Paul Reres in the Amended Complaint. . . . Indeed, Plaintiff did not even include Defendants Vernelly, Carbajal, or Reres in the case caption in his Amended Complaint, indicating Plaintiff's intent to withdraw any claims against those Defendants. Although Plaintiff does reference Defendant Blanco in his Amended Complaint, he does not allege any facts related to Defendant Blanco. . . . As a result, I dismiss all claims against Defendants Blanco, Vernelly, Carbajal, and Reres." (internal citations omitted)); *but see Berk v. City of New York*, No. 96-CV-1964, 2001 WL 1029401, at *4 (S.D.N.Y. Sept. 6, 2001) ("Mindful that plaintiffs were proceeding *pro se* during the period in question, the Court is not persuaded that [the plaintiffs] intended to drop certain defendants from the lawsuit or understood the legal consequences of removing names from the complaints. There was no court order dismissing parties from the case and plaintiffs['] intention to do so cannot be inferred from a notation on a docket sheet or the captioning of their amended complaints."). Further, the Third TRO Motion requests "authorization for limited third-party subpoenas," including on YouTube and TikTok, (Third TRO Mot. 2 (capitalization altered)), and the Fifth TRO Motion provides that YouTube and TikTok are "third-party service providers" and requests that I issue an order "binding" them, (Fifth TRO Mot. 4). The proposed order filed in connection with the Fifth TRO Motion includes a section titled "THIRD-PARTY ENFORCEMENT" and lists "third parties," including YouTube and TikTok. (Doc. 69-4 at 1–2.) Therefore, I find that YouTube and TikTok are not parties to this action.

Since YouTube and TikTok are not parties to this action, Plaintiff may not obtain a default judgment against them. *See* Fed. R. Civ. P. 55(a) (providing for entry of default against a "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise

defend"); *see also Gesualdi v. Semcor Equip. & Mfg. Corp.*, No. 11-CV-4096, 2019 WL 1757775, at *1 n.2 (E.D.N.Y. Feb. 25, 2019) ("Plaintiffs have provided no authority—and the undersigned is aware of none—that would allow this Court to enter judgment against a non-party."), *report and recommendation adopted*, 2019 WL 1760494 (E.D.N.Y. Mar. 21, 2019); *Saunders v. Bank of Am.*, No. 12-CV-9201, 2014 WL 1666665, at *1 (S.D.N.Y. Apr. 2, 2014), *report and recommendation adopted*, 2014 WL 1667001 (S.D.N.Y. Apr. 25, 2014) ("Rule 55 requires that default entries be made against parties only, which necessarily precludes non-parties.  As Moynihan is a non-party, default judgment cannot be entered against him.").

Second, even assuming *arguendo* that YouTube and TikTok are parties to the action, Plaintiff's May 5 and May 7, 2026 affidavits of service, (Docs. 50, 51, 55, and 56),[5] do not indicate that all four complaints were served, despite Magistrate Judge Figueredo's order directing Plaintiff "to serve the summons and all complaints filed to date," (Doc. 43; *see also* Doc. 49 ("Plaintiff is therefore directed to effect service of the summons and the complaint (ECF No. 1), the amended complaint (ECF No. 5), the second amended complaint (ECF No. 20), the third amended complaint (ECF No. 32), and the fourth amended complaint (ECF No. 39)")).

---

[5] I note that the initial May 5, 2026 affidavits of service on YouTube, (Doc. 50), and TikTok, (Doc. 51) are not signed by the process server, although the May 7, 2026 affidavits of service on YouTube, (Doc. 55), and TikTok, (Doc. 56), are signed by the process server.  Moreover, the signature by the process server, Marilyn Stacey Ben, appears to be visibly different between Doc. 55 and Doc. 56:

Instead, the affidavits of service indicate that the following documents were served on YouTube and TikTok: "Complaint; Summons; Declaration; MOTION FOR PERMISSION FOR ELECTRONIC CASE FILING; Pro Se (Nonprisoner) Consent & Registration Form to Receive Documents Electronically; CONSENT TO ELECTRONIC SERVICE; CERTIFICATE OF SERVICE; ORDER OF SERVICE; ORDER GRANTING PERMISSION FOR ELECTRONIC CASE FILING; ORDER." (Doc. 50 at 1; Doc. 51 at 1; Doc. 55 at 1; and Doc. 56 at 1.)

Third, on May 14, 2026, Plaintiff requested a 60-day extension of time to serve the summons and complaint "upon the Defendants" because "due to potential inaccuracies in the Defendants' addresses and uncertainties regarding their current place of business," Plaintiff stated that he "cannot be certain that service has been properly effectuated in compliance with Rule 4." (Doc. 67 at 1.) Plaintiff stated that the "additional time is necessary to verify the accuracy of the service addresses and, if necessary, re-attempt service." (*Id.*) On May 18, 2026, Magistrate Judge Figueredo granted Plaintiff's extension request and ordered Plaintiff to serve Defendants by July 17, 2026. (Doc. 68.) "Because, of course, a default judgment may not be entered against a party who has not been served, this constitutes yet another reason for denial of Plaintiff's motion as against" YouTube and TikTok. *Etere v. City of New York*, No. 08-CV-2827, 2009 WL 498890, at *1, n.1 (S.D.N.Y. Feb. 24, 2009).

Fourth, the Default Judgment Motion does not comport with Local Civil Rule 55.1 and 55.2. Local Civil Rule 55.1 provides that "[a] party seeking entry of default under Fed. R. Civ. P. 55(a) must file: (1) a 'Request to Enter Default,' in a form prescribed by the clerk; (2) an affidavit or declaration showing: (a) that the requirements of Fed. R. Civ. P. 4 for service or waiver of service have been satisfied; and (b) that the party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend; (3) a proposed 'Clerk's

22

Certificate of Default,' in a form prescribed by the clerk; and (4) a certificate of service showing that the foregoing documents have been personally served on, or mailed to the . . . business address (for other defendants) of, the party against whom default is sought." Loc. Civ. R. 55.1(a). Although Plaintiff did attach a request for the Clerk of Court to enter a default against YouTube and TikTok to his Default Judgment Motion, (*see* Doc. 72-1), the Clerk of Court has not yet issued a Certificate of Default—likely because it was attached to the Default Judgment Motion and was not filed as a separate, stand-alone request for a Certificate of Default—and thus Plaintiff prematurely brings the Default Judgment Motion without the prerequisite Certificate of Default. Moreover, Plaintiff did not file an affidavit or declaration showing that the requirements of Fed. R. Civ. P. 4 have been met, and did not file a certificate of service showing that all of the papers submitted in connection with the Default Judgment Motion were served on YouTube and TikTok. "[T]here is no proof that [Plaintiff] mailed [YouTube and TikTok] a hard copy of any documents related to the motion for default judgment. Plaintiff's failure to notify [YouTube and TikTok] of the potential default judgment denied [them] the opportunity to defend [themselves]. Thus, [I] cannot conclude that [YouTube and TikTok] had sufficient notice of the default judgment being sought against them." *Puerner v. Hudson Spine & Pain Med., P.C.*, No. 17-CV-03590, 2019 WL 2548134, at *3 (S.D.N.Y. June 19, 2019).

Fifth, the Default Judgment Motion does not comply with my Individual Rules & Practices in Civil Cases. Pursuant to my Individual Rules, "[a] plaintiff seeking a default judgment must proceed by way of an order to show cause pursuant to the procedure set forth in Attachment A" of my Individual Rules. Individual R. & Prac. in Civ. Cases 4(H). According to Attachment A of my Individual Rules, Plaintiff must obtain a certificate of default from the Clerk's Office pursuant to Fed. R. of Civ. Proc. Rule 55(a) and Local Civil Rule 55.1 and,

23

among other things, file a proposed order to show cause, proposed default judgment, and an affidavit setting forth the information in Attachment A. *Id.* at Attachment A. "Failure to comply with the Court's Individual Rules would, on its own, support the denial of Plaintiff's [Default Judgment] Motion." *Innovative Sports Mgmt., Inc. v. Quezada*, No. 25-CV-4710, 2025 WL 3706644, at \*1 (S.D.N.Y. Dec. 22, 2025) (denying the plaintiff's motion for a default judgment because, among other reasons, the motion did not comply with the Judge's individual rules); *see also U.S. Bank Nat'l Ass'n v. Mc Dermott*, No. 20-CV-352, 2022 WL 2392522, at \*3 (S.D.N.Y. July 1, 2022) ("Plaintiff's Motion for Default Judgment is denied without prejudice for failure to follow this Court's Individual Rules of Practice.").

Accordingly, Plaintiff's Default Judgment Motion is DENIED.

### E.    *Rule 11 Sanctions*

"Federal district courts have 'inherent authority to sanction parties appearing before [them] for acting in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Komatsu v. City of New York*, No. 20-CV-7046, 2021 WL 3038498, at \*17 (S.D.N.Y. July 16, 2021) (quoting *Sassower v. Field*, 973 F.2d 75, 80–81 (2d Cir. 1992)). However, "[t]he unequivocal rule in this circuit is that [a] district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard." *Moates v. Barkley*, 147 F.3d 207, 208 (2d Cir. 1998); *see also Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999) ("Due process requires that courts provide notice and opportunity to be heard before imposing any kind of sanctions" (internal quotation marks omitted)).

Plaintiff has filed five complaints in this action—including amending his complaint twice without the defendants' consent or my permission—and has filed five proposed temporary

24

restraining orders, all of which I now have denied for the same reasons.  These filings appear to be vexatious and duplicative on their face, including attempts to re-litigate issues and present arguments that were already addressed.  *See Komatsu*, 2021 WL 3038498, at *17 (noting that "objectionable conduct that could lead to dismissal includes . . . filing successive requests for injunctive relief that have already been denied, or . . . seeking injunctive relief regarding issues that are not before the Court, or against individuals or entities that are not defendants").  Plaintiff is warned that if his seemingly abusive litigation conduct continues, Plaintiff may face sanctions, including, among other things, monetary sanctions, the revocation of permission to file documents electronically, or dismissal of his lawsuit.

### IV.    Conclusion

Plaintiff's TRO Motions, Discovery Motion, and Default Judgment Motion are DENIED without prejudice for the reasons stated above.  Should Plaintiff wish to further amend his complaint, he must seek leave to do so by filing a motion, which must comply with Local Civil Rule 7.1, and Plaintiff must attach the proposed fifth amended complaint as an exhibit to the motion for leave to amend.  The proposed fifth amended complaint should address the deficiencies identified in the Opinion & Order.  Any motion for leave to file a fifth amended complaint will not alter Plaintiff's time to serve all of the previous summons and complaints filed to date pursuant to Magistrate Judge Figueredo's orders, (*see* Docs. 43, 49, 68).

The Clerk of Court is respectfully directed to terminate Docs. 41, 58, 60, 69, and 72 and remove YouTube LLC, Spotify USA Inc., and Bytedance LTD. (TikTok) from the case caption. SO ORDERED.

Dated:  June 5, 2026
       New York, New York

 

Vernon S. Broderick
United States District Judge